UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

AMIT PATEL

Case No. 3:23-cr-166-HLA-PDB
18 U.S.C. § 1343
18 U.S.C. § 1957

## INFORMATION

The United States Attorney charges:

### BACKGROUND

1. At all times material to this Information, the defendant, AMIT PATEL, was employed by a business ("Business A") in Jacksonville, Florida, in the Middle District of Florida.

2. The defendant was responsible for, among other things, helping prepare Business A's monthly financial statements, overseeing department budgets, and acting as the administrator of various programs, including the business's virtual credit card (or VCC) program.

3. A corporate VCC program is a payment method that functions similarly to a traditional credit card account, but without the need to issue a physical corporate credit card. Under Business A's program, certain designated employees could request VCCs to be used for business-related purchases or expenses. The use of a VCC for personal expenses was not permitted. Each month, the balances due to the financial institutions that supplied the associated credit for the program were debited

from one of Business A's bank accounts automatically.

4. The requests for VCCs were routed to Business A's VCC program administrators for approval. Beginning in or about October 2019, the defendant was the sole administrator over the program. As the sole VCC administrator, the defendant was entrusted with the ability to create user accounts, approve new VCCs, and request changes to the available credit for the VCCs.

5. The defendant also was entrusted with the responsibility of classifying all VCC transactions in Business A's general ledger. Specifically, each month, the defendant received monthly transactional data from the VCC providers. The defendant used the transactional data to create an "integration file" – an Excel spreadsheet that facilitated the input of VCC transactions and cost coding into Business A's accounting system. Each integration file was supposed to accurately account for all of Business A's VCC expenditures for a given month.

6. Once completed, the defendant transmitted the VCC integration files to the accounting department either by sending an email with a copy of the file attached or with a link to the network location where the file was saved.

7. While the defendant was employed by Business A, the business did not locally host its own email system, but instead used a third-party provider. To provide email service to Business A and its other customers, the third-party provider maintained email servers in a variety of locations outside the state of Florida.

8. The defendant used his authority over Business A's VCC program to charge approximately $22,221,454.40 in fraudulent VCC transactions. He began

2

making fraudulent transactions in September 2019 and continued until he was fired in February 2023.

9. As part of the defendant's scheme, rather than accurately report his VCC transactions, the defendant created integration files that contained numerous false and fraudulent entries and emailed them to Business A's accounting department. He used a variety of methods to hide his illicit transactions by omitting them from the integration files, while still having the total dollar amount of VCC expenditures match the balances paid by Business A for the VCC program line of credit.

10. For example, to hide his fraudulent VCC transactions, the defendant identified legitimate reoccurring VCC transactions, such as catering, airfare, and hotel charges, and then duplicated those transactions; he inflated the amounts of legitimate reoccurring VCC transactions; he entered completely fictious transactions that might sound plausible, but that never actually occurred; and he moved legitimate VCC charges from upcoming months into the month of the integration file that was immediately due to the accounting department.

11. The defendant used the proceeds of this scheme, in whole or part, to place bets with online gambling websites; to purchase a condominium in Ponte Vedra Beach, Florida; to pay for personal travel for himself and friends (including chartering private jets and booking luxury hotels and private rental residences); to acquire a new Tesla Model 3 sedan and Nissan pickup truck; to lodge a retainer with a criminal defense law firm; and to purchase cryptocurrency, non-fungible tokens,

3

electronics, sports memorabilia, a country club membership, spa treatments, concert and sporting event tickets, home furnishings, and luxury wrist watches.

12. For example, on October 22, 2022, using a financial institution's virtual payment service, the defendant paid $95,484.15 to purchase a Patek Philippe Nautilus watch from an online luxury consignment store, which was headquartered in San Francisco, California. The defendant paid the entire purchase price with proceeds of his fraud scheme.

## COUNT ONE
### (Wire Fraud)

1. The allegations in Paragraphs 1 – 11 of the Background section are incorporated herein.

2. Beginning in September 2019 and continuing through February 2023, in the Middle District of Florida and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises,

AMIT PATEL,

the defendant herein, did knowingly transmit, and cause to be transmitted, the writings, signs, signals, pictures, and sounds described herein, by means of wire communications in interstate commerce.

All in violation of 18 U.S.C. § 1343.

## COUNT TWO
### (Illegal Monetary Transaction)

1. The allegations in Paragraphs 1 – 12 of the Background section are incorporated herein.

2. On or about October 22, 2022, in the Middle District of Florida and elsewhere,

**AMIT PATEL,**

the defendant herein, did knowingly engage, and attempt to engage, in a monetary transaction, specifically, a monetary transaction affecting interstate commerce, in criminally derived property of a value of $95,484.15, such property having been derived from a specified unlawful activity, that is, the wire fraud offense alleged in Count One.

All in violation of 18 U.S.C. § 1957.

### FORFEITURE

1. The allegations contained in Counts One and Two are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c).

2. Upon conviction for committing wire fraud in violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. Upon conviction of a violation of 18 U.S.C. § 1957, the defendant shall

forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of at least $22,221,454.40, which represents the proceeds of the offense, in addition to the forfeiture of the following assets, which were purchased or funded with proceeds of the offenses and/or involved in an illegal monetary transaction:

    a. The real property located at 602 Marsh Cove Lane, Ponte Vedra Beach, FL 32082 ("condo"); (valued at approximately $265,830.00), titled in the name of Amit Patel, the legal description for which is as follows:

    Unit No. 602 of MARSH COVE CONDOMINIUM, a Condominium according to The Declaration of Condominium recorded in Official Records Book 1491, Page 598, and all exhibits and amendments thereof, Public Records of Saint Johns County, Florida.

    Parcel Identification Number: 051089-0602.

    b. A 2021 Tesla Model 3 sedan, Vehicle Identification Number 5YJ3E1ECMF992388 ("Tesla"), titled in the name of Amit Anil Patel (valued at approximately $40,625.00).

    c. Patek Philippe Nautilus watch, SKU: PAT22506 ("watch"); (valued at approximately $82,000).

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

ROGER B. HANDBERG  
United States Attorney

By: *(signature)*

MICHAEL J. COOLICAN  
Assistant United States Attorney

By: *(signature)*

FRANK TALBOT  
Assistant United States Attorney  
Chief, Jacksonville Division