UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                         Case No. 3:23-cr- *166- # LA -JBT*

AMIT PATEL

## **PLEA AGREEMENT**

Pursuant to Federal Rule of Criminal Procedure 11(c), the United States of

America, by Roger B. Handberg, United States Attorney for the Middle District of

Florida, and the defendant, AMIT PATEL, and the defendant's attorney, Alex King,

Esq., mutually agree as follows:

A.    **Particularized Terms**

    1.    <u>Counts Pleading To</u>

        The defendant shall enter a plea of guilty to Counts One and Two of the

Information.  Count One charges the defendant with wire fraud in violation of 18

U.S.C. § 1343.  Count Two charges the defendant with engaging in an illegal

monetary transaction in violation of 18 U.S.C. § 1957.

    2.    <u>Maximum Penalties</u>

        The maximum penalties for Count One are a term of imprisonment of

not more than twenty years, a fine of not more than $250,000 or twice the gross gain

or twice the gross loss arising from the offense, whichever is greater, or both a term

of imprisonment and a fine, a term of supervised release of not more than three

Defendant's Initials _AP_                                            AF Approval _MT_

years, and a special assessment of $100, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than two years of additional imprisonment, as well as the possibility of an additional term of supervised release.

The maximum penalties for Count Two are a term of imprisonment of not more than ten years, a fine of not more than $250,000, or both a term of imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $100, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than two years of additional imprisonment, as well as the possibility of an additional term of supervised release.

The cumulative maximum penalties for Counts One and Two are a term of imprisonment of not more than thirty years, a fine of not more than $500,000 or $250,000 plus twice the gross gain or twice the gross loss arising from Count One, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $200. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than four years of additional imprisonment, as well as the possibility of an additional term of supervised release.

In addition, the defendant is subject to an order of restitution, as set forth below.

Defendant's Initials _____ 2

3. Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses to which the defendant is pleading guilty. The elements of Count One are:

(1)     the defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises;

(2)     the false pretenses, representations, or promises were about a material fact;

(3)     the defendant acted with intent to defraud; and

(4)     the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

The elements of Count Two are:

(1)     the defendant knowingly engaged or attempted to engage in a monetary transaction;

(2)     the defendant knew the transaction involved property or funds that were the proceeds of some criminal activity;

(3)     the property had a value of more than $10,000;

(4)     the property was in fact proceeds of the wire fraud offense charged in Count One of the Information; and

(5)     the transaction took place in the United States.

4. Indictment Waiver

The defendant will waive the right to be charged by way of indictment before a federal grand jury.

Defendant's Initials _____       3

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses that are both known to the United States Attorney's Office at the time of the execution of this agreement and arise solely from the specific facts described herein.

6.    Acceptance of Responsibility

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a

Defendant's Initials _____        4

downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.    Mandatory Restitution

Pursuant to 18 U.S.C. §§ 3663 and 3663A, the defendant agrees to make full restitution to the victims of the offenses described herein.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the $22,221,454.40 in proceeds the defendant admits he obtained, as the result of the commission of the offenses to which the defendant is pleading guilty, as well as the following assets, which were purchased or funded with proceeds of the offenses and/or involved in an illegal monetary transaction, to which the defendant is to plead guilty :

    a.    The real property located at 602 Marsh Cove Lane, Ponte Vedra Beach, FL 32082 ("condo"); (valued at approximately $265,830.00), titled in the name of Amit Patel, the legal description for which is as follows:

    Unit No. 602 of MARSH COVE CONDOMINIUM, a

Condominium according to The Declaration of Condominium recorded in Official Records Book 1491, Page 598, and all exhibits and amendments thereof, Public Records of Saint Johns County, Florida.

Parcel Identification Number: 051089-0602.

b.    A 2021 Tesla Model 3 sedan, Vehicle Identification Number 5YJ3E1ECMF992388 ("Tesla"), titled in the name of Amit Anil Patel (valued at approximately $40,625.00).

c.    Patek Philippe Nautilus watch, SKU: PAT22506 ("watch"); (valued at approximately $82,000).

The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offenses, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the

Defendant's Initials _____ 6

exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant and the United States have entered into a Stipulation regarding Forfeiture and Restitution, which outlines the parties' agreements as to substitute assets and is attached as Exhibit A.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant

Defendant's Initials __A.V.__                7

to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of

any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

B.     **Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all

Defendant's Initials ___AP___                    9

counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.      Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials _____      10

3. <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or

Defendant's Initials _____ 11

indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court,

Defendant's Initials __AP__       12

with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.     <u>Defendant's Waiver of Right to Appeal the Sentence</u>

           The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then

Defendant's Initials   <u>Ab</u>       13

the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with

Defendant's Initials _AR_                    14

the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and

were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.     Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.     Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _14_ day of ~~November~~ December 2023.

ROGER B. HANDBERG
United States Attorney

AMIT PATEL
Defendant

By: _____
MICHAEL J. COOLICAN
Assistant United States Attorney

ALEX KING
Attorney for Defendant

FRANK TALBOT
Assistant United States Attorney
Chief, Jacksonville Division

Defendant's Initials _AP_          16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:23-cr-

AMIT PATEL

_____

## PERSONALIZATION OF ELEMENTS

Count One

1.      Do you admit that between September 2019 and February 2023, in the Middle District of Florida, you knowingly devised and participated in a scheme to defraud and to obtain money and property by, among other things, emailing documents to your employer, which contained false pretenses, representations, and promises concerning a virtual credit card program, which your employer intended to use exclusively for authorized, business-related purchases?

2.      Do you admit that the false pretenses, representations, and promises were about facts material to your unauthorized and unlawful use of that virtual credit card program?

3.      Do you admit that you acted with the intent to defraud?

4.      Do you admit that as part of the scheme, you transmitted and caused to be transmitted interstate wire communications, specifically emails?

Defendant's Initials _____

Count Two

1.	Do you admit that on October 22, 2022, in Jacksonville, Florida, you knowingly engaged in a monetary transaction while purchasing a watch from an online luxury consignment store, headquartered in San Francisco, California?

2.	Do you admit that you knew that the transaction involved the proceeds of criminal activity?

3.	Do you admit that the transaction was for more than $10,000, more specifically, $95,484.15?

4.	Do you admit that those funds were, in fact, the proceeds of the wire fraud offense charged in Count One?

5.	Do you admit that the transfer took place in the United States?

Defendant's Initials 

2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    Case No. 3:23-cr-

AMIT PATEL

_____

## **FACTUAL BASIS**

Between September 2019 and February 2023, the defendant, Amit Patel, operated a fraud scheme through which he embezzled approximately $22,221,454.40 from his employer, a business headquartered in Jacksonville, Florida ("Business A"). Specifically, the defendant used his role as the administrator for Business A's virtual credit card (or VCC) program to make hundreds of purchases and transactions with no legitimate business purpose. Then, to hide and continue to operate the scheme, he sent falsified accounting records to Business A representatives via interstate wire communications, specifically, emails.

In April 2018, the defendant began working for Business A in Jacksonville. The defendant was responsible for, among other things, helping prepare Business A's monthly financial statements, overseeing department budgets, and acting as the administrator of various programs, including the virtual credit card program.

Defendant's Initials _AP_

A corporate VCC program is a payment method that functions similarly to a traditional credit card account, but without the need to issue a physical corporate credit card. Business A began using a VCC program in April 2019. Under the program, certain designated employees could request VCCs to be used for business-related purchases or expenses. The use of a VCC for personal expenses was not permitted. Each month, the balances due to the financial institutions that supplied the associated credit for the program were debited from one of Business A's bank accounts automatically.

These requests for VCCs were routed to Business A's VCC program administrators for approval. Initially, the defendant was one of two employees with administrator rights over the VCC program. In October 2019, however, after the other employee transferred to a different position, the defendant became the sole administrator over the program.

As the sole VCC administrator, the defendant was entrusted with the ability to create user accounts, approve new VCCs, and request changes to the available credit for the VCCs. He also was entrusted with the responsibility of classifying all VCC transactions in Business A's general ledger. Specifically, each month, the defendant received monthly transactional data from the VCC providers. The defendant used the transactional data to create an "integration file" – an Excel spreadsheet that facilitated the input of VCC transactions and cost coding into Business A's

Defendant's Initials ___ᾏᾗ___ 2

accounting system.  Each integration file was supposed to accurately account for all of Business A's VCC expenditures for a given month.

Once completed, the defendant transmitted the VCC integration files to the accounting department either by sending an email with a copy of the file attached or with a link to the network location where the file was saved.  While the defendant was employed by Business A, the company did not locally host its own email system, but instead used a third-party provider.  To provide email service to Business A and its other customers, the third-party provider maintained email servers in a variety of locations outside the state of Florida.

The defendant used his authority over Business A's VCC program to charge approximately $22,221,454.40 in fraudulent VCC transactions.  He began making fraudulent transactions in September 2019 and continued until he was fired in February 2023.  The defendant used the proceeds of this scheme, in whole or part, to place bets with online gambling websites; to purchase a condominium in Ponte Vedra Beach, Florida; to pay for personal travel for himself and friends (including chartering private jets and booking luxury hotels and private rental residences); to acquire a new Tesla Model 3 sedan and Nissan pickup truck; to ~~lodge a retainer with~~ Pay a criminal defense law firm; and to purchase cryptocurrency, non-fungible tokens, electronics, sports memorabilia, a country club membership, spa treatments, concert and sporting event tickets, home furnishings, and luxury wrist watches.

Defendant's Initials ___AP___        3

For example, on October 22, 2022, using a financial institution's virtual payment service, the defendant paid $95,484.15 to purchase a Patek Philippe Nautilus watch from an online luxury consignment store, which was headquartered in San Francisco, California. The defendant paid the entire purchase price with proceeds of his fraud scheme.

As part of the defendant's wire fraud scheme, rather than accurately report his VCC transactions, the defendant created integration files that contained numerous false and fraudulent entries and emailed them to Business A's accounting department. He used a variety of methods to hide his illicit transactions by omitting them from the integration files, while still having the total dollar amount of VCC expenditures match the balances paid by Business A for the VCC program line of credit. For example, to hide his fraudulent VCC transactions, the defendant identified legitimate reoccurring VCC transactions, such as catering, airfare, and hotel charges, and then duplicated those transactions; he inflated the amounts of legitimate reoccurring VCC transactions; he entered completely fictious transactions that might sound plausible, but that never actually occurred; and he moved legitimate VCC charges from upcoming months into the month of the integration file that was immediately due to the accounting department.

In November 2022, the defendant made fraudulent transactions of approximately $5.6 million, a sum which – by itself – nearly exceeded the credit limit

Defendant's Initials __AP__        4

of the VCC program, which historically had been $4.75 million.  To avoid reaching

that cap, without consulting with his supervisor (or any representative of Business

A), the defendant requested a credit limit increase from the bank that financed the

VCC program.  As a result of his request, the VCC limit was increased to $7.25

million.  The defendant also used fraud proceeds previously transferred to his

personal bank account to make six payments totaling $1,089,000 toward Business

A's outstanding VCC balance.

On October 24, 2023, the defendant was interviewed by federal investigators

at the U.S. Attorney's Office in Jacksonville.  He was accompanied by his retained

counsel, and was advised at the outset that the interview was voluntary and that he

was free to stop the interview and confer with his attorney.  During the interview, the

defendant confirmed that he had administrative control over Business A's VCC

program and that he was prohibited from using VCCs for personal expenses.  He

admitted, however, that he used Business A's VCCs to make personal expenditures,

including gambling.  He also admitted that he used them to buy electronics to sell, in

order to obtain funds for personal use.  He estimated that he spent between $20

million to $22 million using Business A's VCC program.  He admitted that Business

A would not have approved those expenditures.

He stated that it was his responsibility each month to collect and review VCC

expenditure data, finalize integration file spreadsheets that included that data, and

Defendant's Initials ___AB___       5

then email the integration files to Business A's accounting department. He admitted that, to hide his illicit use of the VCC program, he made false entries in the integration files before emailing them to Business A representatives. According to the defendant, he used a variety of methods to create false entries, including artificially inflating legitimate expenses, generating fictious, but realistic sounding expenses, and documenting upcoming expenses on the current month's integration file.

The defendant also admitted that he did not report the money that he had embezzled from Business A as income on his federal tax returns. He acknowledged, however, that such money was reportable as his income.

Defendant acknowledges that there exists a sufficient nexus for purposes of forfeiture between the proceeds received, real property, vehicle, and jewelry, to the criminal conduct set forth above.

Defendant's Initials _____ 6

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:23-cr-166-HLA-JBT

AMIT PATEL

## STIPULATION REGARDING
## FORFEITURE AND RESTITUTION

The United States of America and the defendant, Amit Patel, are entering into

this agreement as to Patel's restitution and forfeiture obligations and his assets (the

real property, vehicle, and jewelry), more fully described below:

## SUBJECT ASSETS

**A.   Real Property**

The real property located at 602 Marsh Cove Lane, Ponte Vedra Beach,
FL 32082 ("condo"); (valued at approximately $265,830.00), titled in
the name of Amit Patel, the legal description for which is as follows:

Unit No. 602 of MARSH COVE CONDOMINIUM, a Condominium
according to The Declaration of Condominium recorded in Official
Records Book 1491, Page 598, and all exhibits and amendments
thereof, Public Records of Saint Johns County, Florida.

Parcel Identification Number: 051089-0602.

**B.   Vehicle**

A 2021 Tesla Model 3 sedan, Vehicle Identification Number
5YJ3E1ECMF992388 ("Tesla"), titled in the name of Amit Anil Patel
(valued at approximately $40,625.00).

**C.   Jewelry**

Patek Philippe Nautilus watch, SKU: PAT22506 ("watch"); (valued at
approximately $82,000).

(collectively, the "Subject Assets")

The parties agree as follows:

## I. <u>Procedural Posture</u>

1.      On October 26, 2023, and in anticipation of the filing of an information and plea agreement, and for the purpose of forfeiture review, Patel provided the United States with an accounting of his assets, which included, among other assets, the real property, vehicle, and jewelry mentioned above.

2.      Patel acknowledges that he is the sole owner of all of the Subject Assets mentioned in this agreement.

3.      The parties agree that the United States is entitled to seek forfeiture against Patel in the amount of $20 million. Patel understands that the United States has not completed its analysis of the loss incurred by victims. However, the parties agree that the defendant will owe restitution of at least $20 million, for a total of $40 million in forfeiture and restitution obligations. Patel understands that the Court is required to order restitution for the full amount of the victim's losses and this agreement is not binding on the Court's determination of the victim's full loss amount.

4.      The parties further agree the Subject Assets are traceable assets subject to forfeiture, and/or involved in an illegal monetary transaction, and that a lis pendens would be appropriate for the real property.

5.      The parties recognize that the approximate fair market values for the Subject Assets are as set forth in the Subject Assets Section above.

6.     This agreement is intended to achieve the parties' goal of partial satisfaction of Patel's anticipated restitution obligations prior to sentencing.

7.     Accordingly, the United States agrees to provide Patel a reasonable opportunity to liquidate the Subject Assets, and Patel agrees to fully participate in the facilitation of the same, subject to the terms and conditions provided herein.

## II.     Terms and Conditions

### A.     Overview

8.     Instead of forfeiting the Subject Assets, the United States will allow Patel an opportunity prior to sentencing to sell the Subject Assets and apply the sale proceeds to satisfy his restitution and forfeiture obligations.

9.     The parties have agreed to a period of **four months** from the date of this Stipulation for Patel to liquidate the Subject Assets.

10.     The net proceeds from the sale of the Subject Assets will first be applied to Patel's restitution. If restitution is satisfied, any excess funds available from the net proceeds obtained from the sale of the Subject Assets shall be paid towards Patel's forfeiture obligation.

11.     For any balance of restitution and/or forfeiture obligations still due after the time period described above, the United States will proceed with the forfeiture of the remaining Subject Assets and Patel will continue to be liable for the full balance of his forfeiture and restitution obligations.

12.     If the United States forfeits the Subject Assets, and there are any excess funds available from the net proceeds obtained from the sale of the properties after

full satisfaction of the forfeiture, the United States shall apply the excess funds towards Patel's restitution obligation.

**B.** **General Sale Provisions**

    **i.** **Real Property**

13. The United States agrees to allow Patel, directly or through his representatives, on behalf of himself, to market the subject real property for sale utilizing a realtor of his choice, except that the realtor be unrelated and unconnected to Patel, and in connection therewith, will pay such realtor a normal fee for services rendered with respect to the subject real property, which cannot exceed **six percent** of the sale prices. Patel agrees to allow the United States to review and approve the listing contract prior to executing any listing agreement.

14. Upon obtaining an offer to purchase a subject real property on terms and conditions acceptable to Patel, he will notify the United States of the intended sale and provide the details of the sale, including a copy of the offer to purchase, and – unless the United States objects to the sale within five business days of receipt of the offer to purchase – Patel will move forward toward closing the sale.

15. The United States will approve the sale provided that the sale price is commercially reasonable, *i.e.* equals or is within **five percent** of the fair market value of either Subject Property, and the seller is obligated to pay only the usual and customary closing costs for real estate transactions. Before the United States can approve the sale of any of the subject real property, Patel must provide the United

States with the preliminary and final settlement statement.

16.    At closing, any or all mortgages, other valid liens against the subject real property, and property taxes shall be paid in accordance with their priority under applicable law.

17.    If Patel has taken all steps outlined in this agreement, and upon confirmation that the sale of the property will take place and the sale proceeds will be directed to either Monroe & King, P.A.'s trust account or to the Clerk of Court, the United States will not pursue the property for forfeiture.

18.    Should Patel be unable to sell the real property in accordance with the terms of this agreement, he agrees to consent to a motion for preliminary order of forfeiture as to each unsold property.

### ii.    Vehicle & Jewelry

19.    Patel also agrees to sell the subject vehicle and jewelry within the time period described above. The United States agrees to allow Patel, directly or through his representatives, to market the subject vehicle and jewelry for sale.

20.    The parties agree that the current outstanding loan balances on the vehicle and/or jewelry will be paid out of the sale price. The parties agree that Patel will sell the vehicle and/or jewelry for at least **80 percent** of the estimated approximate value. Proof of the sale, including the buyer and purchase price, shall be provided to the United States.

21.    Should Patel be unable to sell any of the vehicle and/or jewelry in accordance with the terms of this agreement, he agrees to consult with the United

States to determine an acceptable alternative term for sale of the vehicle and/or jewelry.

### iii. **Payment Towards Restitution**

22.     In order to facilitate the prejudgment restitution payments, Patel agrees that the United States will file an unopposed motion requesting that the Clerk be authorized to accept and hold prejudgment restitution payments.

23.     After payment of all usual and customary closing costs associated with the sale of the subject real property, and the amounts set forth in the preceding paragraph numbered 16, the net proceeds obtained from the sales shall be either: (1) paid into the trust account of Monroe & King, P.A., and held until such time as payment can be made to the Clerk of Court; or if the Court has already entered an order allowing payment of restitution to be made to the clerk of Court, (2) paid directly to the Clerk of Court in accordance with that Order.

24.     Upon entry of the order allowing for the payments, all proceeds from the sales of the real property (either coming directly from the closing agent or being transferred from Monroe & King, P.A.'s trust account), shall be immediately paid to the Clerk, United States District Court. The title company check, or law firm trust account check shall be made payable to "Clerk, U.S. District Court" for the full amount of the net proceeds from the sales of each property and mailed to: Clerk, U.S. District Court, Attention: DCU, 401 West Central Blvd. Suite 1200, Orlando, Florida 32801. The payment must also reference "Amit Patel" and his applicable case number at that time.

25.     After the payment of outstanding liens, the remaining net proceeds from the sales of any vehicle and/or jewelry shall also be held in Monroe & King, P.A.'s trust account until payment can be made to the Clerk of Court. Once the Court enters an order allowing payment of restitution to the Clerk, Patel shall immediately pay the sales proceeds to the Clerk via a check drawn on a law firm trust account, a cashier's check, or a money order made payable to "Clerk, U.S. District Court" and mailed to: Clerk, U.S. District Court, Attention: DCU, 401 West Central Blvd. Suite 1200, Orlando, Florida 32801. The payments must also reference "Amit Patel" and must include the case number.

### iv.     Payment Toward Forfeiture

26.     If the anticipated restitution amount is fully satisfied, any remaining balance of net proceeds obtained from the sales of the Subject Assets shall be applied to forfeiture. The payment of proceeds toward the forfeiture should be made as follows: an official bank check made payable to the "United States Marshal Service" and delivered to the attention of Kelly Lake, Asset Recovery Division, Office of the United States Attorney, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602.

27.     As to any funds that are to be applied to Patel forfeiture balance after satisfaction of restitution, Patel consents to the entry of a Preliminary Order of Forfeiture for the Funds in Lieu of Specific Assets.

### v.     Other General Provisions

28.     The United States has the discretion to extend the deadlines provided above for Patel to complete the liquidation of the Subject Assets. The United States

will consider extending the deadline if Patel establishes that there is good cause to do so because, despite his exercise of due diligence, the extension is necessary to complete the liquidation of the Subject Assets.

29.     The parties agree that, in the event any of the information relating to the Subject Assets is incorrect, this Stipulation can be amended as required to ensure the proper asset is identified and liquidated.

30.     The parties agree that the Court must still order full restitution for the full amount of the victim's loss at sentencing. Upon entry of the restitution order, the Clerk of Court will apply the pre-judgment payments from the sales of the assets to Patel's restitution balance, and any remaining funds will be forfeited.

31.     Patel agrees that this Stipulation shall in no way preclude the United States from undertaking additional enforcement actions as allowed by law to satisfy any restitution, fine, forfeiture, or other criminal monetary penalty ordered in this case. Furthermore, for any of the Subject Assets that are sold within the time frame specified above, Patel consents to an entry of Preliminary Orders of Forfeiture for the Subject Assets.

32.     Patel represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever and agrees unconditionally to release, hold harmless, acquit, and discharge the United States, the Federal Bureau of Investigation, and any agents, servants, and employees of the United States (or any state or local law enforcement agency) acting in their individual or official capacities, from any and all claims by Patel and his successors,

assignees, agents, and employees from any and all claims, demands, causes of actions or suits, agreements, deposited sums, judgments, damages, losses or service, expenses of whatever kind and description, and wheresoever situated, that might not exist or hereafter exist by reason of or arising from the incidents or circumstances giving rise to the proceedings involving the liquidation of assets described in this Agreement.

33. Patel further waives any and all claims or rights that he may have pursuant to 28 U.S.C. § 2412 (the Equal Access to Justice Act) for attorney's fees or other costs he incurred arising out of the criminal investigation, and/or the instant forfeiture action.

34.     Each party shall bear its own costs and attorney's fees incurred in
connection with the forfeiture and disposition of the assets that are the subject of this
Agreement.

_____12/14/23_____          _____
Date                            AMIT PATEL

_____12/14/23_____          _____
Date                            Alex King, Esquire
                                Attorney for Amit Patel
                                Monroe & King, P.A.
                                1805 Copeland Street
                                Jacksonville, FL 32204


                                ROGER B. HANDBERG
                                United States Attorney

_____11/15/23_____          _____
Date                            MAI TRAN
                                Assistant United States Attorney
                                Florida Bar No. 100982
                                300 N. Hogan Street, Suite 700
                                Jacksonville, Florida 32202
                                Telephone: (904) 301-6300
                                Email: mai.tran2@usdoj.gov